IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

KEVIN MATHEWSON,

Plaintiff,

v. Case No. 25-CV-1492

HON. CHAD KERKMAN, et al.,

Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

---

## INTRODUCTION

This Court should dismiss Plaintiff Kevin Mathewson's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The complaint fails to state a viable claim for three reasons.

First, Mathewson cannot obtain an injunction against state-court judges (Defendants Chad Kerkman and Wynne Laufenberg) and a court commissioner (Defendant William Michel, II) under 42 U.S.C. § 1983, which provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Mathewson does not allege that Judges Kerkman or Laufenberg or Commissioner Michel violated a declaratory decree or that declaratory relief

was unavailable. He fails to state a viable claim for an injunction under the plain language of section 1983. Further, to the extent that Mathewson's request for declaratory relief against the judges and commissioner is retrospective, it is also barred.

Second, Mathewson's claims against Judges Kerkman and Laufenberg and Commissioner Michel are barred by absolute judicial immunity. Their actions were purely judicial, and they acted within their jurisdiction: Kerkman acted in his capacity as Deputy Chief Judge of the Second Judicial District, Laufenberg acted in her capacity as Chief Judge of the Second Judicial District, and Michel acted in his capacity as a court commissioner. Therefore, absolute judicial immunity bars Mathewson's claims against the defendants.

Third, in the alternative, if Mathewson is seeking damages, qualified immunity bars his complaint. To the extent that the defendants' actions are not subject to absolute judicial immunity, they are covered by qualified immunity. Mathewson cannot show clearly established law demonstrating that their actions violate the Constitution.

This Court should dismiss the complaint, (Dkt. 1), with prejudice and grant judgment to Defendants.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. Under 42 U.S.C. § 1983, Mathewson cannot pursue claims for injunctive relief and retroactive declaratory relief against Judges Kerkman and Laufenberg and Commissioner Michel.

#### A. Legal principles of 42 U.S.C. § 1983

In *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), the U.S. Supreme Court "interpreted [42 U.S.C.] § 1983 to permit a claim for prospective relief against a judicial officer acting in his judicial capacity." *File v. Martin*, 33 F.4th 385, 391 (7th Cir. 2022). "Congress abrogated *Pulliam*'s holding in 1996 by amending § 1983 to expressly bar such claims." *Id.* 42 U.S.C. § 1983 states that "in any action brought against a judicial officer for an act or omission taken in

such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

"Section 1983 curtails the availability of injunctive relief against judicial officers." *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023). "When an officer acts in his judicial capacity . . . injunctive relief will only be granted if 'a declaratory decree was violated or declaratory relief was unavailable.'" *Id.* (quoting 42 U.S.C. § 1983); *see also Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004) (upholding the dismissal of claims for injunctive relief against a state-court judge as foreclosed by section 1983); *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 763 (8th Cir. 2019) ("Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end-run around judicial immunity." (citation omitted)).

Regarding declaratory relief under section 1983, "declaratory relief is limited to *prospective* declaratory relief." *Id.* at 764. The "only type of relief available to a plaintiff who sues a judge is declaratory relief, *but not every plaintiff is entitled to this remedy*." *Id.* at 763–64 (citation omitted). "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Id.* at 764 (citation omitted). "A complaint 'seeking . . . a declaration of past liability' against a judge instead of 'future rights' does not satisfy the definition of 'declaratory judgment' and renders declaratory relief

unavailable." *Id.* (citation omitted). "'Furthermore,' retrospective declaratory relief cannot 'be granted as '[t]he Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.'" *Id.* (citations omitted).

### B. Mathewson's claims for injunctive relief are foreclosed by section 1983's plain language.

Mathewson's claims for injunctive relief are foreclosed by section 1983's plain language. This case is "an[ ] action brought against a judicial officer for an act . . . taken in such officer's judicial capacity." 42 U.S.C. § 1983. The complaint alleges that Defendants violated Mathewson's constitutional rights by actions they took in their judicial capacities. (Dkt. 1 ¶¶ 4, 10, 11–12, 18–22, 27–28.) He seeks an injunction against them. (Dkt. 1:4 (requesting that this Court "[e]njoin Defendants from enforcing the blanket ban against Plaintiff and Kenosha County Eye")).

Under 42 U.S.C. § 1983, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Mathewson has not alleged that Judges Kerkman or Laufenberg or Commissioner Michel violated a declaratory decree or that declaratory relief was unavailable to him. *See Justice Network Inc.*, 931 F.3d at 763 ("In this case, [the plaintiff] has not alleged that declaratory relief was unavailable or that a declaratory decree was violated; thus, § 1983 bars [the plaintiff's] claim

for injunctive relief.”). Therefore, under the plain language of section 1983, and as that language was interpreted in *Reardon*, *Smith*, and *Justice Network Inc.*, his claims for injunctive relief against these judges and court commissioner are barred by section 1983.

### C. Mathewson's claims for retrospective declaratory relief are also barred.

To the extent that Mathewson's claims for declaratory relief are retrospective, they are also barred. *See Justice Network Inc.*, 931 F.3d at 763–64.

Mathewson seeks declaratory relief that “Defendants' actions violate the First and Fourteenth Amendments and Wisconsin Constitution.” (Dkt. 1:4.) Specifically, he challenges these judges' past actions of (1) Judge Kerkman issuing a directive on September 2, 2025, limiting Mathewson's access to the intake courtroom in Kenosha County, (2) Judge Laufenberg refusing to disturb that directive upon review, and (3) Commissioner Michel following Judge Kerkman's directive. (Dkt. 1 ¶¶ 4, 10–11, 18–22, 27–28.)

Mathewson cannot obtain the declaration he requests because it is retrospective, not prospective. “Declaratory judgments . . . are meant to define the legal rights and obligations of the parties in the anticipation of some *future* conduct.” *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003) (emphasis added). Therefore, “declaratory relief is limited to *prospective* declaratory

relief." *Justice Network Inc.*, 931 F.3d at 764. Mathewson is essentially asking this Court to "*invalidate* the actions of [Judges Kerkman and Laufenberg and Commissioner Michel]," and he "is not entitled to such relief under § 1983." *Id.* (citation omitted).

## II. Mathewson's claims are barred by absolute judicial immunity.

### A. Legal principles of judicial immunity

Generally, judges are absolutely immune from civil suits. Judicial immunity is premised upon the "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (alteration in original) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Judges "will be entitled to absolute immunity if their actions meet a two-part test: first, the acts must be *within the judge's jurisdiction*; second, these acts must be performed in the judge's *judicial capacity*." *Dellenbach v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989) (citing *Stump*, 435 U.S. at 360; *Bradley*, 80 U.S. at 351–52). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his

authority . . . ." *Stump*, 435 U.S. at 356. "[H]e will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57 (quoting *Bradley*, 80 U.S. at 351).

### B. Background regarding the Chief Judge and Deputy Chief Judge roles

As Chief Judge and Deputy Chief Judge of the Second Judicial District, Judges Laufenberg and Kerkman have roles overseeing the actions of courts, which includes jurisdiction over who is allowed in courtrooms in the circuit courts in their judicial district.

"The state is divided into judicial administrative districts for the purpose of administering the court system." Wis. Stat. § 757.60. "Each district includes all the circuit courts within the district." *Id.* "The 2nd district consists of Kenosha, Racine and Walworth counties." Wis. Stat. § 757.60(2); *see also* SCR 70.17(2).

"The supreme court shall appoint a chief judge in each judicial administrative district, who shall be a circuit judge within the district, for a term of 2 years, commencing August 1 of the year of appointment." SCR 70.18. "The chief judge shall exercise within the judicial administrative district the full administrative power of the judicial branch of government subject to the administrative control of the supreme court." SCR 70.20(1). "The chief judge may order that his or her directives, policies and rules be carried out." *Id.* The

chief judge has additional authority under the Wisconsin Statutes, which is described in SCR 70.21(1)–(5), (7)–(16s), (17e)–(26). As described in this brief, the chief judge of a judicial district also has a role under SCR 61.60 in resolving disputes over media and camera access in courtrooms.

The chief judge of a district "shall" appoint a deputy chief judge, who "shall provide assistance to the chief judge in administrative areas requiring the participation by a judicial officer." SCR 70.26. "The deputy chief judge's duties and authority are delegated by the chief judge and may include acting for the chief judge in his or her absence and representing the chief judge at official functions or in dealings with other agencies." *Id.*

Judge Laufenberg was appointed Chief Judge of the Second Judicial District and began serving a two-year term on August 1, 2024. Stephen Kelley, *Supreme Court appoints two new chief judges; re-appoints four*, Third Branch eNews, https://www.wicourts.gov/news/thirdbranch/may24/chiefjudges.htm (last visited Dec. 3, 2025). Judge Kerkman was appointed Deputy Chief Judge of the Second Judicial District by Judge Laufenberg. Stephen Kelley, *New deputy chief judges appointed in four districts*, Third Branch eNews, https://www.wicourts.gov/news/thirdbranch/sep24/chiefjudges.htm (last visited Dec. 3, 2025).

### C. Absolute judicial immunity bars Mathewson's claims against Judges Kerkman and Laufenberg because their actions were judicial and within their jurisdiction.

Under *Dellenbach v. Letsinger*, absolute judicial immunity bars Mathewson's claims against Judges Kerkman and Laufenberg.

#### 1. Judges Kerkman and Laufenberg's actions were performed in their judicial capacities.

First, the judges' actions were performed in their judicial capacities. *Dellenbach*, 889 F.2d at 759.

##### a. Judge Kerkman's actions were judicial.

Regarding Judge Kerkman, Mathewson alleges that on September 2, 2025, Judge Kerkman "sent a written email directive to Commissioner Michel ordering that 'all media requests by Mr. Mathewson for intake court shall be denied' and that [Mathewson] was prohibited from entering courtroom 157, the intake courtroom." (Dkt. 1 ¶ 18; 1-1 (copy of the directive).) Judge Kerkman signed it "Deputy Chief Judge Chad Kerkman," sent it to Commissioner Michel, and carbon copied, among others, all Kenosha County judges, Judge Laufenberg (Chief Judge of the Second Judicial District), and Kenosha County Clerk of Circuit Courts Rebecca Matoska-Mentink. (Dkt. 1-1.) There is no question that the directive was issued by Judge Kerkman in his judicial capacity as Deputy Chief Judge of the Second Judicial District.

"[T]he courtroom and courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966). Judge Kerkman's directive is immune from suit because his judicial role includes deciding who is allowed in the Kenosha County Courthouse courtrooms and under what circumstances. Two examples illustrate the point.

In *Stevens v. Osuna*, 877 F.3d 1293, 1305 (11th Cir. 2017), the Eleventh Circuit held that a federal immigration judge's decision to close some immigration hearings to the public and to exclude the plaintiff "were decisions made in the direct exercise of the judicial function." "Judges have an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse." *Id.* "[T]he issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges." *Id.* The court of appeals found the immigration judge immune from suit. *Id.* at 1304–09.

In *Cameron v. Seitz*, 38 F.3d 264, 267, 269, 271–72 (6th Cir. 1994), the Sixth Circuit held that a state probate-court judge was immune from a section 1983 suit raising First and Fourteenth Amendment claims based, in part, on his barring the plaintiff, a probate-court employee, from the courtroom. "A judge acts in his judicial capacity when he exercises control over his courtroom." *Id.* at 271. "[W]hen [Judge] Seitz barred [the plaintiff] from his courtroom, he was acting in his judicial capacity and was entitled to judicial

immunity." *Id.* "Further, as part of the exercise of control over his courtroom, a judge may control the conduct of those who appear in the courtroom." *Id.*

*Stevens* and *Cameron* teach that a judge determining who enters a courtroom and when are judicial acts subject to immunity. Judge Kerkman's issuing the September 2, 2025, directive was judicial in nature, as it controlled when Mathewson may enter the intake courtroom in Kenosha County and under what circumstances, which are decisions judges regularly make.

**b. Judge Laufenberg's actions were judicial.**

Regarding Judge Laufenberg, Mathewson alleges that he appealed Judge Kerkman's directive to Judge Laufenberg, who "issued a written response to Plaintiff's appeal, stating that she lacked authority to overturn Judge Kerkman's directive and that all future requests must be submitted through [Wisconsin Supreme Court Rule] 61." (Dkt. 1 ¶ 22.) He alleges that "Chief Judge Laufenberg's refusal to overturn Judge Kerkman's directive contradicts [Wisconsin Supreme Court Rule] 61, which vests the Chief Judge with supervisory authority to resolve such disputes." (Dkt. 1 ¶ 28.)

Supreme Court Rule 61 governs electronic media and still photography coverage of judicial proceedings, and it provides a specific role for the Chief Judge of a judicial district. First, some background about SCR 61 is instructive.

The rules in SCR 61 "do not limit or restrict the power, authority or responsibility otherwise vested in the trial judge to control the conduct of

proceedings before the judge." SCR 61.01(1). "[T]rial judge," in chapter 61, "includes any judicial officer who conducts a public proceeding." SCR 61.01(2).

"If possible, the trial judge shall be given notice, at least 3 days in advance, of the intention of the media to bring cameras or recording equipment into the courtroom." SCR 61.02(2). "In the discretion of the trial judge, this notice rule may be waived if cause for the waiver is demonstrated." *Id.* Under SCR 61.05(1), "[t]he trial judge shall designate the location in the courtroom for the camera equipment and operators." "Camera operators shall occupy only the area authorized by the trial judge and shall not move about the courtroom for picture taking purposes during the court proceeding." SCR 61.05(2).

Under SCR 61.10, "[a] dispute as to the application of [SCR 61] in a court proceeding may be referred only to the chief judge of the administrative district for resolution as an administrative matter." "An appellate court shall not exercise its appellate or supervisory jurisdiction to review at the request of any person or organization seeking to exercise a privilege conferred by this chapter any order or ruling of a trial judge or chief judge under this chapter." *Id.*

Judge Laufenberg acted in her role as Chief Judge of the Second Judicial District when she reviewed Mathewson's appeal under SCR 61.10. Her actions were judicial in nature and, like Judge Kerkman's, were to keep order in and maintain control of the intake courtroom in the Kenosha County Courthouse. She reviewed Judge Kerkman's directive and did not disturb it, as she was

permitted to do as Chief Judge of the Second Judicial District acting under SCR 61. These were judicial actions exercising discretion under SCR 61.10.

In sum, Judges Kerkman and Laufenberg's actions were performed in their judicial capacities. *Dellenbach*, 889 F.2d at 759.

#### 2. Judge Kerkman and Laufenberg's actions were within their jurisdiction.

Second, Judges Kerkman and Laufenberg's actions were within their jurisdiction as Deputy Chief Judge and Chief Judge of the Second Judicial District, respectively. *Id*.

Judge Kerkman's directive that is being challenged was issued solely in his role as Deputy Chief Judge of the Second Judicial District: he signed the email issuing the directive "Deputy Chief Judge Chad Kerkman" and issued it to all the judges in Kenosha County, Commissioner Michel, and the Kenosha County Clerk of Circuit Courts, among others. (Dkt. 1-1.)

Likewise, Judge Laufenberg's reviewing an appeal of Judge Kerkman's directive was undertaken in her role as Chief Judge of the Second Judicial District when she resolved a dispute under SCR 61.10.

In sum, Judges Kerkman and Laufenberg's actions were within their jurisdiction. *Dellenbach*, 889 F.2d at 759.

* * *

Judges Kerkman and Laufenberg's actions are subject to absolute judicial immunity because they were purely judicial and within their jurisdiction. This Court should dismiss Mathewson's complaint.

### D. Absolute judicial immunity bars Mathewson's claims against Commissioner Michel.

As with Judges Kerkman and Laufenberg, Mathewson's claims against Commissioner Michel are barred by judicial immunity. The doctrine of judicial immunity, explained above, extends to court commissioners. *See, e.g.*, *Ross v. Arnold*, 575 F. Supp. 1494, 1495 (E.D. Wis. 1983) ("The doctrine is fully applicable to suits, such as the present action, maintained under section 1983, and it extends to judges of every status in the judicial hierarchy, from magistrates to justices of the peace, to family court commissioners." (citation omitted)).

The actions of Commissioner Michel that Mathewson complains of are carried out pursuant to Judge Kerkman's directive. As Mathewson alleges in his complaint, "[o]n, September 2, 2025, Judge Kerkman sent a written email directive to Commissioner Michel ordering that 'all media requests by Mr. Mathewson for intake court shall be denied' and that Plaintiff was prohibited from entering courtroom 157, the intake courtroom." (Dkt. 1 ¶ 18.) Three days later, "[o]n September 5, 2025, Plaintiff made two separate requests: one same-day request, and another more than three days in advance,

consistent with SCR 61's suggested guideline. Both were denied by Commissioner Michel." (Dkt. 1 ¶ 21.)

As explained above, the decision to prohibit Mathewson from the intake courtroom is judicial—"the courtroom and courthouse premises are subject to the control of the court." *Sheppard*, 384 U.S. at 358. In addition, as explained above, Judge Kerkman's directive was made within his jurisdiction. Therefore, both prongs of *Dellenbach* are satisfied. *See Dellenbach*, 889 F.2d at 759.

Pursuant to SCR 75.02(1), court commissioners are appointed to "perform limited judicial and quasi-judicial functions *under the direction and authority of the chief judge and the judges of the circuit*." (Emphasis added); *see also* Wis. Stat. §§ 757.68, 757.69. As Mathewson alleges, Commissioner Michel's actions were taken pursuant to Judge Kerkman's directive. (*See* Dkt. 1 ¶¶ 18, 21.) As explained above, Judge Kerkman's directive is entitled to judicial immunity. As Commissioner Michel was obligated, pursuant to both supreme court rule and statute, to comply with the direction of judges, he is likewise entitled to judicial immunity.

This is especially so since, as the Seventh Circuit has concluded, "alleged acts of . . . court personnel" that are "nonmechanical functions integral to the judicial process . . . are entitled to absolute immunity." *Dellenbach*, 889 F.2d at 763. Federal courts in Wisconsin have used this rational to extend judicial

immunity to court commissioners specifically. *See, e.g.*, *Moorish Sci. Temple of Am. ex rel. McCauley v. McCrory*, No. 22-CV-0475-WMC, 2022 WL 5241859, *2 (W.D. Wis. Oct. 6, 2022) ("Court commissioners performing 'functions integral to the judicial process' are also immune from liability." (quoting *Dellenbach*, 889 F.2d at 763)). This is so because "it is simply unfair to spare the judges who give orders while punishing the officers who obey them." *Dellenbach*, 889 F.2d at 763 (quoting *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989)). Therefore, Commissioner Michel is entitled to judicial immunity, and this Court should dismiss Mathewson's complaint.

## III. In the alternative, Mathewson's claims for damages, if any, are barred by qualified immunity.

In the alternative, if Mathewson is seeking damages against Defendants, (*see* Dkt. 1:4 ("[a]ward costs, attorney's fees, and such other relief")), his complaint is barred by qualified immunity.

### A. Legal principles of qualified immunity

"Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted).

Although qualified immunity is "an affirmative defense," once it is raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). To do so, a "plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Id.* (citation omitted). A court has "discretion to choose which of these elements to address first." *Id.*

Clearly established "means that, at the time of the [official's] conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (citation omitted). A legal principle is beyond debate only when it has a "sufficiently clear foundation in then-existing precedent." *Id.* That means the "rule must be 'settled law,'" *i.e.*, "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* (citations omitted).

"[C]learly established law cannot be framed at a 'high level of generality.'" *Campbell*, 936 F.3d at 545 (citation omitted). To avoid generality, a court "must determine whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Leiser*, 933 F.3d at 702 (citation omitted). That requires a court to consider whether

the law clearly prohibited "the [official's] conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63. Although a plaintiff need not point to "a case 'on all fours' with the facts" presented, he must "show some settled authority that would have shown a reasonable" official in the same position that his or her "actions violated the Constitution." *Leiser*, 933 F.3d at 702 (citation omitted). In sum, the "demanding" qualified immunity standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583 U.S. at 63 (citation omitted).

Lastly, "the defense of qualified immunity does not protect defendants from an action for injunctive relief." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012). However, as argued above, Mathewson's claims for injunctive relief are barred by section 1983's plain language.

**B. To the extent that absolute judicial immunity does not bar Mathewson's damages claims, if any, they are barred by qualified immunity.**

Mathewson cannot overcome qualified immunity because he cannot show that the defendants violated a clearly established constitutional right. *See Wesby*, 583 U.S. at 63; *Leiser*, 933 F.3d at 702.

Mathewson cannot meet his burden to show that clearly established, controlling precedent required the defendants to act differently than they did in determining who may access the Kenosha County Courthouse's intake courtroom and under what circumstances such access is granted. Mathewson can point to no controlling case from the U.S. Supreme Court or the Seventh Circuit establishing that their actions, as alleged, violate the First or Fourteenth Amendments to the U.S. Constitution. On the contrary, persuasive authorities like *Stevens* and *Cameron* indicate that the judges' actions here were immune from suit. In other words, no judge in the defendants' positions would understand, based on controlling precedent, that their actions clearly violated the Constitution. *See Leiser*, 933 F.3d at 702.

Because Mathewson cannot meet his burden to overcome qualified immunity, it provides an alternative basis to dismiss Mathewson's claims for damages, if any. *See id.* at 701.

## CONCLUSION

This Court should grant Defendants' motion to dismiss the complaint, (Dkt. 1), with prejudice and enter judgment in their favor.

Dated this 3rd day of December 2025.

Respectfully submitted,

| | |
|---|---|
| Electronically signed by:<br><br>s/Clayton P. Kawski<br>CLAYTON P. KAWSKI<br>Assistant Attorney General<br>State Bar #1066228<br><br>Counsel for Defendants<br>Honorable Chad Kerkman and<br>Honorable Wynne Laufenberg<br><br>Wisconsin Department of Justice<br>Post Office Box 7857<br>Madison, Wisconsin 53707-7857<br>(608) 266-8549<br>Clayton.Kawski@wisdoj.gov | Electronically signed by:<br><br>s/Molly K. Woodford<br>MOLLY K. WOODFORD<br>State Bar #1126884<br><br>SAMUEL C. HALL, JR.<br>State Bar #1045476<br><br>Counsel for Defendant<br>Commissioner William Michel, II<br><br>Crivello, Nichols & Hall, S.C.<br>710 North Plankinton Ave.,<br>Suite 500<br>Milwaukee, WI 53203<br>(414) 290-7587 (Hall)<br>(414) 271-7722 (Woodford)<br>shall@crivellolaw.com<br>mwoodford@crivellolaw.com |