IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

KEVIN MATHEWSON,

    Plaintiff,

  v.
                                    Case No. 25CV01492

HONORABLE CHAD KERKMAN,
HONORABLE WYNNE LAUFENBERG
and COMMISSIONER WILLIAM MICHEL, II,

    Defendants.

## AMENDED COMPLAINT

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 to vindicate the rights of journalist Kevin Mathewson, founder and editor of Kenosha County Eye ("KCE"), to freedom of the press, equal protection, and open access to court proceedings guaranteed by the United States Constitution, the Wisconsin Constitution, and Wisconsin Supreme Court Rule 61.

2. This case is about a bona fide journalist in Kenosha County who runs the most popular news site in Kenosha County being not only silenced, but targeted and even subjected to baseless law-enforcement reports and efforts to have him imprisoned because he reported on truthful matters involving Defendant Judge Chad Kerkman—his misconduct, an inappropriate sexual relationship with his clerk, his repeated reversals by appellate courts, and his treatment of staff and litigants.

3. Plaintiff has written factual information about other judges being overturned and engaging in conduct the public did not like. Those judges did not retaliate. They continue to credential Plaintiff without incident. Only Judge Kerkman responded by weaponizing his judicial position to punish protected speech.

4. After years of uneventful and professional media access in Kenosha and multiple other Wisconsin courts, Judge Kerkman became the only judge in the State of Wisconsin to categorically deny KCE media credentials, including for still photography in open court.

5. When he ascended to the honorary administrative title of Deputy Chief Judge of the Second Judicial District in 2024, Judge Kerkman used that position not to improve court administration, but to search for a way to punish KCE for its reporting. In September 2025, he found it: a unilateral "directive" that all media requests by Mathewson for intake court "shall be denied" and that Mathewson is prohibited from entering the intake courtroom itself.

6. That directive—and related retaliatory and administrative actions described below—are not adjudicative rulings in any pending case. They are ongoing administrative, policy, and retaliatory acts, taken outside of any particular case, aimed squarely at silencing and punishing one disfavored news outlet.

7. The challenged policies and directives are still being enforced. Plaintiff seeks prospective declaratory and injunctive relief to stop this ongoing retaliatory regime and to require Defendants to administer media access on equal terms with other credentialed media outlets.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

9. This Court has authority to award declaratory relief under 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted herein occurred in Kenosha County, Wisconsin, located within the Eastern District of Wisconsin.

## PARTIES

11. Plaintiff Kevin Mathewson is a journalist residing in Kenosha, Wisconsin. He is the founder, editor, and primary reporter for Kenosha County Eye, the most widely read local news source in Kenosha County, reaching hundreds of thousands of readers per month. His reporting has been re-broadcast and cited by local, state, national, and international media.

12. Defendant Hon. Chad Kerkman is a Kenosha County Circuit Court Judge and, at all times relevant, served as Deputy Chief Judge of the Second Judicial District. He is sued in his individual and official capacities.

13. Defendant Hon. Wynne Laufenberg is a Racine County Circuit Court Judge and Chief Judge of the Second Judicial District. She is sued in her individual and official capacities.

14. Defendant Commissioner William Michel II is a Kenosha County Circuit Court Commissioner, appointed under Wisconsin Supreme Court rules. He is sued in his individual and official capacities.

2

# GENERAL FACTUAL ALLEGATIONS

### A. Plaintiff's History as a Credentialed Journalist

15. Since founding Kenosha County Eye in 2020, Plaintiff has been credentialed well over one hundred times to photograph proceedings in Kenosha intake court by Commissioners Larry Keating, William Michel II, and others.

16. Plaintiff has also been credentialed to photograph in courtrooms presided over by Circuit Court Judges in Kenosha County Circuit Court, Racine County Circuit Court, Milwaukee County Circuit Court, Walworth County Circuit Court, Brown County Circuit Court, Kenosha Municipal Court, Pleasant Prairie Municipal Court, and additional courts in Wisconsin.

17. In 2023, in Culat v. Mathewson, Case No. 2023CV000288, Kenosha County Circuit Court Judge David Wilk ruled that Plaintiff and Kenosha County Eye constitute bona fide news media entitled to reporter's privilege under Wis. Stat. § 885.14.

18. Plaintiff has served as pool photographer in major national trials, including the retrial of State v. Mark Jensen (approved by Kenosha County Circuit Court Judge Milisauskas) and the murder trial of Zachariah Anderson (approved by Kenosha County Circuit Court Judge Schroeder). Those trials received substantial national and international coverage featuring Plaintiff's photography and reporting.

19. Plaintiff's coverage of Kenosha County courts and politics has repeatedly been picked up, shared, and referenced by national outlets, underscoring his role as a recognized member of the press beyond local reporting.

20. Until 2025, Plaintiff had never been sanctioned, removed, or disciplined in any way by any presiding judicial officer for his media work in courtrooms.

### B. Judge Kerkman's Longstanding Animus Toward KCE

21. Judge Kerkman has long harbored intense animus toward Kenosha County Eye because of Plaintiff's reporting on his conduct, including stories about his courtroom behavior, his treatment of staff and litigants, a sexual relationship with his clerk, and multiple instances in which his rulings were reversed by appellate courts.

22. No other judge in Wisconsin has ever categorically denied Kenosha County Eye's media credential requests. Judge Kerkman stands alone in his effort to exclude Plaintiff from photographing and recording open court proceedings.

23. Around the time of KCE's reporting on Judge Kerkman's reversals and alleged misconduct, Judge Kerkman instituted a policy—directed at court staff he believed were under his control—prohibiting them from sharing stories authored by Kenosha County Eye on social

3

media. This internal gag policy was not applied to other news outlets and directly targeted KCE, further evidencing his animus and viewpoint discrimination.

24. On December 3, 2025, Judge Kerkman unilaterally fired West Jacobs, a longtime and well-liked bailiff who is a United States Airforce veteran, solely because Jacobs had shared KCE articles on social media. This firing was not based on performance or misconduct but on Jacobs's association with and support for Plaintiff's reporting.

### C. Kerkman's Use of Deputy Chief Judge Role to Punish KCE

25. In or about September 2024, Judge Kerkman was appointed Deputy Chief Judge of the Second Judicial District—a largely honorary administrative title.

26. Upon assuming that role, Judge Kerkman sought to leverage his new administrative authority to punish KCE for publishing information he did not like. He believed that as Deputy Chief Judge he could exert control over the intake courtroom in the Pretrial Building in Kenosha County.

27. Judge Kerkman identified intake courtroom 157 as the only courtroom he believed he directly controlled for purposes of media access, and he resolved to use that position to exclude Plaintiff and his publication from that space.

### D. The September 2, 2025 Directive Banning Mathewson from Intake Court

28. On September 2, 2025, Judge Kerkman sent a written email directive to Commissioner Michel ordering that "all media requests by Mr. Mathewson for intake court shall be denied" and that Plaintiff was prohibited from entering courtroom 157, the intake courtroom in the Pretrial Building.

29. The directive further stated that if Plaintiff attempted to enter the courtroom, he was to be immediately told to leave; that he could only observe from behind the glass wall; that he could not have a camera; and that he could not have a phone in plain view.

30. The directive did not arise from any specific case, motion, or proceeding. It was not an adjudicative ruling in a particular matter. It was a blanket, one-size-fits-all administrative policy directed at a single journalist and publication, imposed outside any adversarial proceeding.

31. Judge Kerkman signed and circulated the directive in his capacity as Deputy Chief Judge. The email was addressed to Commissioner Michel and copied to all Kenosha County Circuit Court judges and the Clerk of Circuit Court.

32. On that same date, September 2, 2025, Plaintiff's request to photograph intake court—requests that previously had been routinely granted—was denied for the first time in five years.

4

33. Since issuing this directive, Defendants have continued to enforce the ban against Plaintiff. The directive remains in effect today, and Plaintiff remains prohibited from entering courtroom 157 and from receiving media credentials for intake court in Kenosha County.

### E. Timing of the Ban in Relation to Bailiff Tammy Rose

34. The timing of the September 2 ban was no coincidence. Judge Kerkman implemented the ban just eight days before his bailiff, Tammy Rose, was scheduled for her initial appearance on a felony charge.

35. Plaintiff had already reported on Rose's criminal charge and had every intention of covering her initial appearance and photographing her in court, as he would with any other defendant in a public felony proceeding.

36. Judge Kerkman knew that Plaintiff would cover Rose's case. He did not want his bailiff photographed as a felony defendant in open court because it would embarrass him and draw further scrutiny to his judgment and staffing decisions.

37. On September 18, 2025, Tammy Rose appeared for her preliminary hearing in front of a court commissioner. That commissioner ordered Rose to be fingerprinted and to have her mugshot taken by the Kenosha County Sheriff's Office.

38. Judge Kerkman then took steps to undermine or nullify that order, ensuring that Rose did not have to submit to standard booking procedures. In doing so, he protected his own image at the expense of transparency and equal treatment under the law.

39. The September 2 ban and subsequent interference in Rose's booking illustrate that Judge Kerkman's actions were driven by personal interest and animus, not by neutral application of law or judicial necessity.

### F. Denials of Plaintiff's Requests and Chief Judge Laufenberg's Response

40. On September 5, 2025, Plaintiff made two separate requests to photograph intake court: one same-day request and another more than three days in advance, consistent with SCR 61's suggested guidelines. Both were denied by Commissioner Michel pursuant to Judge Kerkman's directive.

41. Plaintiff appealed the ban to Chief Judge Wynne Laufenberg, as permitted by SCR 61.10, asking her to overturn the directive and restore equal access.

42. On September 22, 2025, Chief Judge Laufenberg issued a written response stating that she lacked authority to overturn Judge Kerkman's directive and that all future requests must be submitted through SCR 61. She refused to
disturb the ban.

5

43. Under SCR 61, however, the Chief Judge has supervisory authority to resolve disputes over media access as an administrative matter. Chief Judge Laufenberg's refusal to disturb the directive—along with her assertion that she lacked authority—contradicted the plain language and structure of SCR 61 and ratified the retaliatory policy.

44. On September 22, 2025, consistent with her instructions, Plaintiff submitted a request through the media coordinator to photograph intake court on September 26, well beyond the three-day guideline. The request was denied.

45. On September 26, 2025, Plaintiff requested permission for freelance photographer Nathan DeBruin to photograph intake court on assignment for KCE. That request also was denied the same day.

46. Because Plaintiff's and KCE's requests were automatically denied pursuant to the September 2 directive, these denials were administrative enforcement of a standing policy rather than case-specific judicial decisions.

### G. Preferential Treatment for Other Media and the October 9, 2025 Global Ban

47. On September 23, 2025, NBC affiliate TMJ4 reporter Glenda Valdez was permitted to video record intake court on the same day without going through SCR 61 or the media coordinator. Commissioner Michel contacted Judge Kerkman, who granted Valdez permission.

48. This preferential treatment for TMJ4 contrasted sharply with the categorical ban applied to Plaintiff and KCE and illustrates Defendants' viewpoint-based discrimination and denial of equal protection.

49. After Plaintiff filed this lawsuit, public criticism over the ban intensified.

50. On or about October 9, 2025, in apparent attempt to mitigate his exposure in this federal case, Judge Kerkman briefly extended the ban to all media filming stills and video in intake court. On that day, TMJ4 was denied access and could not photograph or record.

51. TMJ4 and other media immediately challenged the global ban. In response, Judge Kerkman reversed course and abandoned the universal restriction.

52. However, once media pressure subsided, he resumed enforcing the ban solely and specifically against Plaintiff and KCE. Thus, the October 9 ban revealed that the earlier "security" or "administrative" rationale was pretext, and that the policy's true purpose was to target a single disfavored outlet.

53. Since the ban and through the present, Plaintiff continues to be credentialed to photograph and report on high-profile cases in every other Kenosha County Circuit Court branch—including

Branches 1, 2, 3, 4, 5, 6, and 7—as well as in Racine County, Milwaukee County, and other jurisdictions.

54. Those matters include, for example, the Tiron Washington homicide trial and the Christian Enwright grooming and sexual exploitation trial, along with other serious criminal and civil proceedings.

55. Despite being trusted and credentialed by every other Kenosha County judge, Plaintiff remains banned from photographing in Judge Kerkman's courtroom and from intake courtroom 157, which Judge Kerkman considers within his administrative control.

56. Judge Kerkman has actively attempted to convince other circuit judges to deny KCE media credentials for photography and video. Those judges have refused to go along with the retaliation and continue to credential Plaintiff, highlighting that only Defendants insist on excluding him.

### H. Retaliatory Law-Enforcement Complaints Against Plaintiff

57. Judge Kerkman's campaign against KCE reached its apex on or about September 9, 2025, shortly before this lawsuit was filed.

58. On that date, Judge Kerkman reported to the Kenosha County Sheriff's Office that Plaintiff's truthful reporting on his conduct placed him in fear of great bodily harm or death, and he urged law enforcement to take action against Plaintiff.

59. The report was based on Plaintiff's news coverage and commentary, not on any true threat or incitement. It was a retaliatory attempt to trigger a criminal investigation or prosecution as punishment for protected journalism.

60. The Kenosha County Sheriff's Office investigated and found the complaint unfounded.

61. Undeterred, Judge Kerkman contacted Wisconsin Capitol Police—the agency tasked with investigating threats to judges and other state officials—in an attempt to escalate the matter.

62. These law-enforcement complaints were not part of any case over which Judge Kerkman was presiding. They were personal, retaliatory acts by a public official using his position and access to law enforcement to retaliate against a critic.

63. The pattern is clear: Kerkman did not merely deny Plaintiff courtroom access. He went further, attempting to engineer criminal consequences for a journalist because he did not like what was written about him.

### I. Firing of Bailiff West Jacobs and Concealment of Records

7

64. On December 3, 2025, Judge Kerkman unilaterally fired longtime bailiff West Jacobs after discovering that Jacobs had shared Kenosha County Eye articles on social media.

65. Jacobs had previously served as Kerkman's bailiff but at one point quit because he believed Kerkman belittled plaintiffs, litigants, other bailiffs, and court staff.

66. The December 3 firing was not rooted in misconduct or job performance. It was a direct act of retaliation against a staff member for engaging with, supporting, and amplifying Plaintiff's journalism.

67. Plaintiff submitted public records requests to Judge Kerkman seeking documents related to the firing, including any written directive prohibiting staff from sharing KCE stories, and records concerning Jacobs's disciplinary history.

68. In response, Judge Kerkman falsely claimed that West Jacobs was a circuit court commissioner—something he has never been and cannot be, because he is not a licensed attorney—and asserted that his "disciplinary record" was exempt from disclosure under a vague statutory citation.

69. This misrepresentation was made to conceal the true retaliatory reason for the firing and to hide the existence and scope of his anti-KCE staff speech policy.

**J.  Commissioner Michel's Role**

70. At all times relevant, Commissioner Michel was appointed to perform limited judicial and quasi-judicial functions under the direction of the chief judge and circuit judges, including presiding over intake court and media requests.

71. Michel received Judge Kerkman's September 2 directive and acted on it by denying Plaintiff's media requests categorically, without independent consideration under SCR 61 for each proceeding.

72. SCR 61 assigns to the presiding judicial officer responsibility for determining whether cameras and media will be allowed in a given proceeding and directs that requests be handled with "reasonable promptness."

73. Michel had authority and discretion under SCR 61 to grant or deny requests; he was not a purely ministerial subordinate with no ability to decline an unlawful directive.

74. Even if he believed he had to follow Judge Kerkman's instructions, Michel had no legal duty to enforce an unconstitutional, retaliatory policy targeted at one journalist. He nonetheless did so, thereby personally participating in the violation of Plaintiff's rights.

75. Michel continued to deny Plaintiff's requests after it was clear that other media outlets were being granted access to the same courtroom and after Plaintiff had made clear his belief that the ban was unconstitutional.

### K. Ongoing Nature of the Ban and Unavailable Declaratory Relief in State System

76. Defendants' ban and related retaliatory actions are ongoing. The September 2 directive, Chief Judge Laufenberg's refusal to overturn it, and Commissioner Michel's enforcement collectively continue to bar Plaintiff from obtaining media credentials in intake court and from entering courtroom 157 as other members of the press and public may do.

77. The directive is not a one-time judicial ruling subject to appellate review. It is a continuing administrative policy, enforced each time Plaintiff requests to cover intake court.

78. Under SCR 61.10, disputes about media access may be referred to the Chief Judge as an "administrative matter." The rule expressly precludes appellate or supervisory review by Wisconsin appellate courts at the request of media organizations or individuals seeking to exercise privileges under the rule.

79. As a result, there is no state declaratory decree Plaintiff can invoke, and no state-court mechanism by which he can obtain a declaratory judgment that the ban is unlawful and must cease.

80. Declaratory relief in the state system is, as a practical and legal matter, unavailable to Plaintiff with respect to the challenged policies. Prospective declaratory and injunctive relief from this Court is therefore necessary to halt the ongoing constitutional violations.

### L. Harm to Plaintiff

81. As a result of Defendants' actions, Plaintiff has been deprived of equal access to intake court and of the ability to gather news on equal terms with other credentialed media.

82. Plaintiff has been denied the opportunity to document and report on significant intake proceedings, including felony initial appearances, bond hearings, and other matters of public concern.

83. Plaintiff has suffered reputational harm, emotional distress, damage to his ability to practice his profession, and loss of opportunities to gather and sell photographs and content to other outlets.

84. The retaliatory law-enforcement complaints and attempt to have Plaintiff imprisoned would chill a person of ordinary firmness from continuing to engage in robust coverage of Judge Kerkman and the courts. Plaintiff nonetheless continues to report on public officials, but under the cloud of persistent retaliation.

85. Defendants' actions have a chilling effect not only on Plaintiff but also on other journalists and members of the public who might otherwise criticize powerful judicial officers in Kenosha County.

## CLAIMS FOR RELIEF

### COUNT I
### First Amendment – Freedom of the Press and Retaliation
### (42 U.S.C. § 1983 – All Defendants)

86. Plaintiff realleges and incorporates by reference paragraphs 1–85 as if fully set forth herein.

87. Plaintiff engaged in protected First Amendment activity by publishing news stories, commentary, and criticism about Judge Kerkman and the Kenosha County courts, including truthful reporting about his conduct and reversals.

88. Defendants took adverse actions against Plaintiff, including but not limited to: issuing and enforcing the September 2 directive; denying Plaintiff courtroom and media access; seeking to have Plaintiff arrested or prosecuted based on his reporting; firing a bailiff for sharing KCE stories; and attempting to persuade other judges to deny KCE credentials.

89. These adverse actions would deter a person of ordinary firmness from continuing to engage in protected speech and press activity.

90. Defendants' actions were motivated, at least in substantial part, by Plaintiff's protected speech and viewpoint and by hostility toward KCE's coverage.

91. Defendants acted under color of state law in taking the actions described above.

92. Defendants' acts and policies violate the First Amendment rights of freedom of the press and freedom of speech.

93. Plaintiff is entitled to declaratory and injunctive relief, and to any additional relief the Court deems just and proper, for this ongoing constitutional violation.

### COUNT II
### Fourteenth Amendment – Equal Protection / Selective Enforcement
### (42 U.S.C. § 1983 – All Defendants)

94. Plaintiff realleges and incorporates by reference paragraphs 1–93 as if fully set forth herein.

95. Plaintiff and his publication are similarly situated to other media outlets, including television stations such as TMJ4 and other newspapers and online news sites that seek to photograph or record intake court.

96. Defendants have treated Plaintiff differently from similarly situated media outlets by categorically denying his requests for media access and banning him from courtroom 157, while allowing other outlets access, including same-day approvals, when convenient.

97. The October 9, 2025 temporary universal ban, followed by a rapid reversal back to a Mathewson-only ban, demonstrates that Defendants can and do treat Plaintiff uniquely and disfavor him compared to other media.

98. This differential treatment is not rationally related to a legitimate governmental interest. It is based on Defendants' animus, retaliation, and disapproval of Plaintiff's viewpoint and reporting.

99. Defendants' selective enforcement and discrimination violate the Equal Protection Clause of the Fourteenth Amendment.

100. Plaintiff is entitled to declaratory and injunctive relief, and to any additional relief the Court deems just and proper, for this ongoing equal protection violation.

### COUNT III
### Right of Access to Judicial Proceedings – First and Fourteenth Amendments & Wisconsin Constitution art. I, § 9 (Open Courts)
### (42 U.S.C. § 1983 – All Defendants)

101. Plaintiff realleges and incorporates by reference paragraphs 1–100 as if fully set forth herein.

102. The First and Fourteenth Amendments secure for the public and the press a qualified right of access to criminal and other judicial proceedings, including intake court proceedings.

103. Wisconsin's Constitution, art. I, § 9, guarantees that courts "shall be open," reflecting a policy of transparency and public accountability.

104. Defendants' blanket ban targeting Plaintiff and KCE alone, while permitting other media access, unlawfully restricts Plaintiff's ability to attend, observe, photograph, and report on public proceedings in intake court.

105. Defendants' acts interfere with Plaintiff's right to gather news and to report on matters of public concern in open courts, and they do so in a manner that is neither narrowly tailored nor justified by a compelling or even substantial government interest.

106. By imposing and enforcing a continuing ban on Plaintiff's presence in courtroom 157 and on his ability to receive media credentials in intake court, Defendants violate Plaintiff's rights of access guaranteed by the First and Fourteenth Amendments and by the Wisconsin Constitution.

107. Plaintiff is entitled to declaratory and injunctive relief, and to any additional relief the Court deems just and proper, to halt these ongoing violations.

## COUNT IV
### Declaratory and Injunctive Relief Under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202
### (All Defendants)

108. Plaintiff realleges and incorporates by reference paragraphs 1–107 as if fully set forth herein.

109. Plaintiff seeks a prospective declaratory judgment that the ongoing enforcement of Defendants' September 2, 2025 directive, their continuing refusal to process Plaintiff's media requests on equal terms with other media, their retaliatory law-enforcement complaints, and related policies and practices violate the First and Fourteenth Amendments and the Wisconsin Constitution.

110. Plaintiff further seeks an injunction prohibiting Defendants from continuing to enforce the September 2 directive and any similar or successor bans targeted at KCE, and requiring Defendants to consider Plaintiff's media requests under SCR 61 on equal terms with all other credentialed media.

111. The challenged policies and acts are ongoing. The relief sought is prospective. Plaintiff does not ask this Court to review or reverse any particular judicial decision in any specific case, but instead seeks to halt a continuing pattern of administrative and retaliatory conduct.

112. Because SCR 61 precludes appellate or supervisory review at the request of media organizations seeking to exercise its privileges, and because Defendants' actions arise from administrative policies rather than adjudicative rulings, Plaintiff has no adequate declaratory remedy in the state-court system. Declaratory relief is effectively unavailable to Plaintiff there.

113. Under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202, this Court has authority to issue declaratory and injunctive relief against Defendants to prevent continuing violations of Plaintiff's constitutional rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Declare that Defendants' ongoing actions, policies, and directives—including but not limited to the September 2, 2025 directive and its enforcement—violate the First and Fourteenth Amendments to the United States Constitution and the Wisconsin Constitution;

B.   Permanently enjoin Defendants from enforcing the September 2, 2025 directive and any successor or similar bans targeted at Plaintiff or Kenosha County Eye, and require Defendants to process Plaintiff's media requests under SCR 61 on equal terms with other credentialed media outlets;

C.   Award Plaintiff his costs and reasonable attorney's fees and costs (if any) under 42 U.S.C. § 1988; and

D.   Award such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable as a matter of right.


Dated: December 22, 2025.

        Respectfully submitted,


        /s/ Kevin Mathewson
        620 56th Street
        Kenosha, WI 53140
        kevin@kenoshacountyeye.com
        (262) 237-8501