# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KEVIN MATHEWSON,

Plaintiff,

v.

HONORABLE CHAD KERKMAN, HONORABLE WYNNE LAUFENBERG, and COMMISSIONER WILLIAM MICHEL, II,

Defendants.

Case No. 25-CV-1492-JPS

**ORDER**

## 1. INTRODUCTION

In this case, Plaintiff Kevin Mathewson ("Plaintiff"), proceeding pro se, sues three court officials—Chad Kerkman ("Judge Kerkman"), Wynne Laufenberg ("Chief Judge Laufenberg"), and William Michel, II ("Commissioner Michel") (collectively, "Defendants")—for constitutional violations arising from Defendants limiting Plaintiff's access to court proceedings. ECF No. 20. Defendants jointly move to dismiss the case in its entirety; that motion is now fully briefed. ECF Nos. 18, 22, 23, 24.[1] For the reasons provided herein, the Court will grant in part and deny in part Defendants' motion to dismiss.

---

[1]Defendants filed an initial motion to dismiss that was obviated by Plaintiff's amended complaint. ECF Nos. 17, 18, 20. The Court considers Defendants' initial brief, ECF No. 18, which was filed prior to the amended complaint, in ruling on the motion to dismiss. *See* Jan. 12, 2026 text order.

## 2. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing a complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81. However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009)).

## 3. FACTUAL BACKGROUND[2]

Judge Kerkman and Commissioner[3] Michel are court officials in Kenosha County, Wisconsin, and Chief Judge Laufenberg is a court official

---

[2]The Court adopts the following recitation of facts from the operative complaint, ECF No. 20, omitting irrelevant facts and conclusory assertions, and omitting citations except where material is quoted directly. The Court supplies additional contextualizing facts where needed.

[3]Commissioners perform "limited judicial and quasi-judicial functions under the direction and authority of the chief judge and the judges of the circuit." WIS. SUP. CT. R. 75.02(1).

in neighboring Racine County, Wisconsin. At the time of the events alleged, Chief Judge Laufenberg was Chief Judge and Judge Kerkman was Deputy Chief Judge of the Second Judicial District, which encompasses both counties.[4]

Plaintiff is a journalist in Kenosha County and runs a popular news site called Kenosha County Eye ("KCE"). Historically, Plaintiff has obtained media credentials to photograph many Wisconsin courtrooms, including the Kenosha County Circuit Court and intake court proceedings there. He has never been sanctioned, removed, or disciplined in any way by a presiding judicial officer for his media work in courtrooms.

Plaintiff reported on Judge Kerkman's alleged "misconduct, an inappropriate sexual relationship . . . , his repeated reversals by appellate courts, and his treatment of staff and litigants." ECF No. 20 at 1. Plaintiff alleges that Judge Kerkman "harbored intense animus" toward KCE for this reporting and used his position as Deputy Chief Judge of the Second Judicial District to punish KCE for its reporting. *Id*. at 2–4.

Specifically, on September 2, 2025, Judge Kerkman issued a written directive (the "September Directive") that "all media requests by [Plaintiff] for intake court shall be denied" and prohibited Plaintiff from entering the intake courtroom. *Id*. at 4; *see also* ECF No. 20-1. The directive further stated that if Plaintiff attempted to enter the courtroom, he was to be immediately told to leave and that he could only observe from behind the glass wall

---

[4]Wisconsin "is divided into judicial administrative districts for the purpose of administering the court system." WIS. STAT. § 757.60. The Second Judicial District includes Kenosha and Racine Counties. *Id.* at § 757.60(2).

"with the rest of the public." ECF No. 20-1. The directive also restricted Plaintiff from having a camera or a phone in plain view.

The September Directive did not arise in connection with any specific case, motion, or proceeding. Plaintiff does allege, however, that the September Directive went into effect eight days before Judge Kerkman's former bailiff was scheduled to be in intake court for her initial appearance in a felony case, theorizing that Judge Kerman "did not want his bailiff photographed as a felony defendant in open court." ECF No. 20 at 5.

The September Directive was signed by Judge Kerkman and addressed to Commissioner Michel; it was circulated by email and all the Kenosha County Circuit Court judges and the Clerk of the Circuit Court received copies. Plaintiff states that "Judge Kerkman considers" the intake courtroom "within his administrative control." *Id.* at 7.

The same day the September Directive was circulated, Plaintiff requested to photograph proceedings in the intake courtroom. Such requests had routinely been granted up to that point. However, this request was denied.

On September 5, 2025, Plaintiff made two separate requests to photograph the intake courtroom: one same-day request and another placed more than three days in advance "consistent with" Wisconsin Supreme Court Rule 61. ECF No. 20 at 5. Wisconsin Supreme Court Rule 61 relates to media coverage and photography of court proceedings. "If possible, the trial judge [presiding over a proceeding] shall be given notice, at least 3 days in advance, of the intention of the media to bring cameras or recording equipment into the courtroom." WIS. SUP. CT. R. 61.02(2).

Both requests were denied by Commissioner Michel, ostensibly pursuant to the September Directive. Plaintiff appealed to Chief Judge

Laufenberg, asking her to overturn the September Directive. On September 22, 2025, Chief Judge Laufenberg issued a written response "stating that she lacked authority to overturn [the September Directive] and that all future requests must be submitted through [Wisconsin Supreme Court Rule] 61."[5] ECF No. 20 at 5.

That same day, Plaintiff submitted a request through the media coordinator to photograph the intake courtroom on September 26, 2025, but it was denied.

To date, the September Directive remains in effect, precluding Plaintiff from entering the intake courtroom and from receiving media credentials for the same. Plaintiff alleges that another media outlet, TMJ4, has been permitted to video-record intake court without going through the Wisconsin Supreme Court Rule 61 process. Judge Kerkman briefly extended the September Directive to "ban . . . all media filming stills and video in intake court," which TMJ4 challenged; he later reversed course and "resumed enforcing the ban solely and specifically against Plaintiff and KCE." *Id.* at 6.

Plaintiff raises a First Amendment claim that he was retaliated against for protected activity, a Fourteenth Amendment equal protection claim that KCE was treated differently than other media outlets, and claims under the First and Fourteenth Amendment and the Wisconsin Constitution for violations of Plaintiff's right of access to court. For relief,

---

[5]Plaintiff does not attach Laufenberg's Response to his original or his amended complaints (as he did with the September Directive). The Court accepts his characterization of Laufenberg's Response for purposes of the motion to dismiss. *Kubiak*, 810 F.3d at 480–81.

he seeks a declaration that "the ongoing enforcement" of the September Directive is unconstitutional and an injunction against enforcement of the September Directive and requiring Defendants to process KCE media requests "on equal terms with other credentialed media outlets." ECF No. 20 at 12, 13. He sues each Defendant in both their individual and official capacities.

**4. LAW & ANALYSIS**

Defendants advance three arguments for dismissing Plaintiff's claims. First, they argue that the complaint fails to state a claim for relief because Plaintiff's requested forms of relief are unavailable—specifically, because 42 U.S.C. § 1983 prohibits injunctive relief against judicial officers for acts "taken in such officer's judicial capacity" except in limited circumstances, and because Plaintiff's request for declaratory relief is effectively retrospective, not prospective. ECF No. 18 at 3–7. Second, they argue that they are entitled to absolute judicial immunity for their alleged actions. *Id.* at 7–17. Third, as an alternative to judicial immunity and to the extent Plaintiff is seeking damages, they argue that they are entitled to qualified immunity. *Id.* at 17–20.

The Court finds it prudent to first take up the issue of judicial immunity—which involves determining whether Defendants were acting in their judicial capacities—before turning to Defendants' other arguments. *See Brown v. Neville*, No. 1:26-CV-01825, 2026 WL 1534326, at *4 (N.D. Ill. June 1, 2026) ("*If* the Illinois Justices acted in their judicial capacity when they vacated Brown's appointment, then injunctive relief is banned unless declaratory relief is unavailable to him." (citing *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023)) (emphasis added)).

As explained below, Defendants were all acting in their judicial capacities and therefore are entitled to judicial immunity insofar as Plaintiff is seeking damages. However, Plaintiff's claims for injunctive and declaratory relief against Defendants are not foreclosed and will proceed.

### 4.1 Judicial Immunity

Absolute immunity applies to "officials whose special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Judges fit squarely within this category of officials who are entitled to immunity from suits for money damages in their individual capacities. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Plaintiff's operative complaint makes no request for money damages, *see generally* ECF No. 20, but "judicial immunity is an immunity from suit, not just the ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Court analyzes whether any Defendant is shielded by judicial immunity.

A plaintiff may overcome a judge's assertion of judicial immunity in two circumstances. *Id.* "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* at 11–12 (citing *Forrester v. White*, 484 U.S. 219, 227–29 (1988) and *Stump*, 435 U.S. at 360). In deciding whether the first circumstance is present, courts take a functional approach, considering "the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (citing *Stump*, 435 U.S. at 356–57 and *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Judicial immunity is not overcome

by allegations of bad faith or malice. *Id.* at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) and *Harlow*, 457 U.S. at 815–19).

#### 4.1.1 Judge Kerkman

Defendants argue that "Judge Kerkman's . . . judicial role includes deciding who is allowed in the Kenosha County Courthouse courtrooms and under what circumstances" and that "a judge determining who enters a courtroom and when are judicial acts subject to immunity." ECF No. 18 at 11–12. Plaintiff responds that, because Judge Kerkman's September Directive is an ongoing policy, was not tied to a particular case, and was issued "without adversarial process," Judge Kerkman was acting administratively and in a policymaking capacity when he issued it, and therefore judicial immunity is unavailable. ECF No. 23 at 2, 6–7.

As a starting point, the parties agree that Judge Kerkman was not exercising control over his own courtroom or a proceeding or litigant therein when he issued the September Directive, but rather was asserting courtroom/courthouse management authority as Deputy Chief Judge over one of the courts in his judicial district. *See* ECF No. 20 at 7 (Plaintiff alleging that Judge Kerkman "considers [the intake courtroom] within his administrative control"); ECF No. 18 at 10 (Defendants stating that "the directive was issued by Judge Kerkman in his judicial capacity as Deputy Chief Judge of the Second Judicial District").

A judge's management of *their own* courtroom proceedings, and specifically, excluding individuals from the courtroom and controlling the conduct of those who appear in a courtroom, is a paradigmatic example of a judicial action protected by judicial immunity. *See Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) ("A judge acts in his judicial capacity when he exercises control over his courtroom." (citing *Sheppard v. Maxwell*, 384 U.S.

333, 358 (1966))); *see also Mireles*, 502 U.S. at 12 ("A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." (citations omitted)).

But in issuing the September Directive, Judge Kerkman was not managing *his* courtroom or proceedings or litigants over which he was personally presiding. Rather, his directive operated as a blanket ban on Plaintiff's presence in intake court, regardless of what matters were being heard or which court official presided over them. Defendants do not directly address this distinction in their briefs.[6] Nonetheless, for the following reasons, the Court finds that the September Directive was "a function normally performed by a judge," issued by Judge Kerkman "in his judicial capacity," and accordingly subject to judicial immunity. *Stump*, 435 U.S. at 362.

"The Seventh Circuit has yet to consider whether a general order entered by a chief judge is a judicial act entitled to immunity, and the other circuits are divided." *Ferrari v. Threlkeld*, No. 26-CV-00009-SMY, 2026 WL 1552543, at *3 (S.D. Ill. June 2, 2026) (collecting cases). In *Ferrari*, the chief judge of the judicial division entered an administrative order barring the plaintiff from entering any court facility in the division in response to

---

[6]Defendants' briefing suggests that the distinction between the courtroom in particular and the courthouse at large is meaningless. *See* ECF No. 18 at 11 (citing *Stevens v. Osuna*, 877 F.3d 1293 (11th Cir. 2017); *Stevens*, 877 F.3d at 1305 ("[T]he issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges . . . ."). In *Stevens*, an immigration judge ordered the plaintiff removed from the courthouse on one occasion and ordered her out of the courtroom on another. 877 F.3d at 1300. Here, Plaintiff is subject to an administrative order, banning him from entering or recording the intake courtroom. The scope of the ban and the judge's authority for it are distinct. Accordingly, this case requires more nuanced analysis.

"disruptive conduct" by the plaintiff in numerous cases. *Id.* at *1, *3. Even though the plaintiff was not litigating any of those cases before the chief judge, the district court found that the chief judge's administrative order was a judicial act and accorded the chief judge immunity. *Id.* at *3.

The Court agrees with the district court's reasoning in *Ferrari*, though the Court concurs that it is a somewhat "close[] question." *Id.* As previously noted, courtroom management is a quintessentially judicial task. By extension, a chief judge's management of an individual's access to the courthouse and specific areas therein—irrespective of whether that individual is a litigant or an observer—is a judicial task. *See Payne v. County of Cook*, No. 15 C 3154, 2016 WL 1086527, at *8 (N.D. Ill. Mar. 21, 2016) ("[A] judge, and particularly a chief judge, has many administrative duties that which are part of his normal function, and no less judicial than the act of presiding over a courtroom." (quoting *Primm v. County of Dupage*, No. 92 C 3726, 1993 WL 338762, at *6 (N.D. Ill. Sept. 2, 1993))); *see also, e.g.*, *Springer v. Seventh Jud. Dist. Ct.*, No. 1:23-CV-00499-MIS-JMR, 2024 WL 2804431, at *5 (D.N.M. May 31, 2024) (granting judicial immunity to chief judge for administrative orders barring plaintiff from judicial division's courthouses unless plaintiff had specific court business), *appeal dismissed*, No. 24-2087, 2024 WL 4976323 (10th Cir. Oct. 31, 2024), *and aff'd*, No. 24-2174, 2025 WL 3121605 (10th Cir. Nov. 7, 2025); *Zou v. Ebberts*, No. 2:25-CV-02231-HLT-RES, 2025 WL 1720284, at *1–3 (D. Kan. June 20, 2025) (holding judicial immunity barred individual capacity claims against chief judge for administrative orders barring plaintiff from parts of courthouse even though the chief judge was not presiding over the plaintiff's cases). Additionally, power over the courtroom "implies necessarily the power to remove a person from the courtroom (and court building): for example,

when a person might be perceived to threaten the integrity of judicial proceedings." *Stevens v. Osuna*, 877 F.3d 1293, 1307 (11th Cir. 2017).

It does not matter that the September Directive might be labeled an administrative order or that it may have been issued pursuant to Judge Kerkman's administrative authority as a deputy chief judge under the Wisconsin Supreme Court Rules, as Plaintiff argues. ECF No. 23 at 7; ECF No. 18 at 8–9 (Defendants explaining that chief and deputy chief judges perform administrative duties in their judicial districts and citing WIS. SUP. CT. R. 70.20, 70.21, and 70.26). As the cases above find, under the functional approach to assessing whether an act was done in a judicial capacity, a so-called "administrative" order can still be considered a judicial act. *See Ferrari*, 2026 WL 1552543, at *2 ("Because judicial immunity is determined using a functional test, the fact that the challenged orders were titled 'administrative' orders is irrelevant under *Forrester*[, 484 U.S. 219]." (citing *Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006))). Controlling a courtroom is a "function normally performed by a judge." *Stump*, 435 U.S. at 362. The September Directive, aimed at regulating Plaintiff's access to the intake courtroom, was therefore a judicial act. Even if the September Directive is considered an administrative act, administrative acts that are "inexorably connected" with a judicial function or "analogous to judicial action" are also considered judicial acts. *Wilson v. Kelkhoff*, 86 F.3d 1438. 1444 (7th Cir. 1996) (quoting *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994)).

Relatedly, it does not matter that the September Directive was not attached to a particular case or adjudication, as Plaintiff notes. ECF No. 23 at 6. "Valid judicial acts are often performed outside the courtroom." *Lopez v. Vanderwater*, 620 F.2d 1229, 1234 (7th Cir. 1980) (rejecting argument that the defendant judge acted outside his jurisdiction "because he acted outside

a courtroom and had not been assigned to sit in [the judicial division] or hear the case"), *cert. denied*, 449 U.S. 1028 (1980).

It is also irrelevant that the September Directive is a continuing policy as opposed to an instance of "momentary courtroom control." ECF No. 23 at 6. Plaintiff cites no law demonstrating the relevance of this distinction. First, even an act of "momentary courtroom control," *id.*, can have lasting effects (for example, an order of contempt or a disciplinary sanction against an attorney), so the distinction Plaintiff attempts to draw strains logic. Moreover, as the cases cited above conclude, a judge who issues an administrative order imposing long-term restrictions on an individual's access to a courtroom or the courthouse acts in his judicial capacity. Plaintiff's argument that an order with ongoing effect cannot be considered a judicial act is unpersuasive.

Plaintiff additionally argues that Judge Kerkman's September Directive was "rulemaking, policy issuance, [or] enforcement of standing directives" and therefore not a judicial act. *Id.* The first case he cites for this proposition, *Forrester*, is clearly distinguishable, because *Forrester* dealt with a judge who was sued for terminating an employee. 484 U.S. at 220–21. Plaintiff correctly observes that "personnel decisions are administrative, not judicial," ECF No. 23 at 6, but does not explain why the September Directive is more akin to a personnel decision than a judicial act. Plaintiff's other case, *Supreme Court of Virginia v. Consumers Union of the United States*, is more on point, but still distinguishable. There, judicial immunity was not available to the Virginia Supreme Court for promulgating a code of conduct for attorneys because doing so "was not an act of adjudication but one of rulemaking." 446 U.S. 719, 731. The Supreme Court adopted the lower court dissenter's reasoning that this act was not judicial because "[d]isciplinary

rules are rules of general application" that arise "out of a need to regulate conduct for the protection of all citizens." *Id.* (quoting 470 F. Supp. 1055, 1064 (E.D. Va. 1979)). The September Directive was not a rule of general application and regulated the conduct of one individual in one particular place (except for a brief period in which Judge Kerkman extended it to all media). True, the attorney code of conduct at issue "d[id] not arise out of a controversy which must be adjudicated," *id.* (quoting same), which is also true of the September Directive. But as explained above, the fact that the September Directive was not connected to a case does not, alone, make it a non-judicial act.[7]

For all these reasons, the Court is satisfied that Judge Kerkman's September Directive constituted a judicial act. The Court is also satisfied that Judge Kerkman did not act in the "complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11 (citations omitted). Judge Kerkman's authority to regulate access to the intake courtroom in the judicial district of which he was chief judge flows from the inherent authority that all judges have to regulate conduct in the courtrooms over which they are presiding.

Further, for the reasons explained above, the Court finds that judicial immunity applies to Judge Kerkman. Finally, although Plaintiff does not directly argue as much in his brief, the Court dismisses any notion that Judge Kerkman's motivations behind the September Directive defeat judicial immunity. *Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not

[7]Plaintiff's citation to *Supreme Court of Virginia v. Consumers Union* is also curious because the Supreme Court there noted that *legislative* immunity would have protected the Virginia Supreme Court. 446 U.S. 719, 733–34. So, applying Plaintiff's own cited authority, if Judge Kerkman was engaging in rulemaking, he would likely be protected by another form of official immunity.

overcome by allegations of bad faith or malice . . . ." (citations omitted); *Jenkins v. Wigginton*, No. 25-cv-01220-SPM, 2026 WL 507360, at *4 (S.D. Ill. Feb. 24, 2026) ("A 'judge will not be deprived of immunity even if the action was in error, was done maliciously, [or] was in excess of his authority . . . .'") (quoting *Brokaw v. Mercer County*, 235 F. 3d 1000, 1015 (7th Cir. 2000)).

#### 4.1.2 Chief Judge Laufenberg

Chief Judge Laufenberg is also entitled to judicial immunity. Plaintiff argues that her refusal to overturn the September Directive must not have been a judicial act because Wisconsin Supreme Court Rule 61.10's "explicit designation" of the chief judge's review of a media dispute as an "administrative matter." ECF No. 23 at 3–4. This argument fails the functional test for the same reasons explained above as to Judge Kerkman: labels, even those laid out in the Wisconsin Supreme Court Rules, are not determinative. What matters is whether the action is one "normally performed by a judge." *Stump*, 435 U.S. at 362. Controlling a courtroom is a quintessential judicial function, and Chief Judge Laufenberg's review of the September Directive served the ultimate purpose of controlling the intake courtroom. Her review also necessarily required the "adjudicatory skill" typical of judicial acts. *See Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989).

Chief Judge Laufenberg also clearly acted within her jurisdiction. Wisconsin Supreme Court Rule 61.10 expressly makes chief judges like her responsible for reviewing disputes as to the application of the media rules in that chapter. In reviewing the September Directive, she was exercising her authority under this rule. *See Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) ("To the extent that the statute imposes a duty on the judge . . . , that duty implicates the judge's role *as judge* rather than as an

administrative or clerical officer. Judge Newman is [thus] absolutely immune and the claims against him were properly dismissed.").

#### 4.1.3 Commissioner Michel

Finally, Commissioner Michel is entitled to judicial immunity. Commissioner Michel is among the group of individuals for whom judicial immunity may legally apply. *Ross v. Arnold*, 575 F. Supp. 1494, 1495 (E.D. Wis. 1983) ("The doctrine is fully applicable to suits, such as the present action, maintained under section 1983, and it extends to judges of every status in the judicial hierarchy, from magistrates to justices of the peace, to family court commissioners." (citing *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983) and *Turner v. Raynes*, 611 F.2d 92, 93–97 (5th Cir. 1980); further citation omitted). Here, as explained *supra* Sections 4.1.1 and 4.1.2, the September Directive constitutes a judicial act, as does a judge's refusal to overturn the same. By the same reasoning, Commissioner Michel's denial of Plaintiff's request for media access to the intake courtroom falls into the category of a judicial act as well, because it was done in service of courtroom management, a traditionally judicial task. "Court commissioners performing 'functions integral to the judicial process' are also immune from liability." *Moorish Sci. Temple of Am. ex rel. McCauley v. McCrory*, No. 22-CV-475-WMC, 2022 WL 5241859, at *2 (W.D. Wis. Oct. 6, 2022) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)); *Dellenbach*, 889 F.2d at 763 ("[T]o grant judges absolute immunity but to deny that same immunity to court personnel would undermine the policies behind granting the judges absolute immunity for these acts."); *see also Myrick v. Greenwood*, 856 F.3d 487 (7th Cir. 2017) (affirming dismissal of suit against state judges and court commissioners based on judicial immunity). Commissioner Michel was also acting within his jurisdiction in carrying out

Judge Kerkman's directive. *See supra* n.3 (citing WIS. SUP. CT. R. 75.02(1)). For these reasons, Commissioner Michels is entitled to judicial immunity in this case.

### 4.2 Availability of Requested Relief

Having found that all three Defendants were acting in a judicial capacity, the Court now addresses their arguments that Plaintiff's requested forms of relief are unavailable.[8]

#### 4.2.1 Injunctive Relief

By its terms, § 1983 "curtails the availability of injunctive relief against judicial officers." *Reardon*, 74 F.4th at 827. "When an officer acts in his judicial capacity . . . [,] injunctive relief will only be granted if 'a declaratory decree was violated or declaratory relief was unavailable.'" *Id.* (quoting 42 U.S.C. § 1983 and citing *Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004)).

Defendants argue that § 1983 straightforwardly forecloses injunctive relief because Plaintiff does not allege that any Defendant violated a declaratory decree or that declaratory relief was unavailable to him. ECF No. 18 at 5. Plaintiff responds that declaratory relief is in fact unavailable to him and that he has alleged as much in the operative complaint. ECF No. 23 at 2, 4–5; *see also* ECF No. 20 at 9 (allegations that declaratory relief is

---

[8]Plaintiff includes a standalone claim under 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief. ECF No. 20 at 12. This is unnecessary because § 2201, the Declaratory Judgment Act, "does not . . . provide an independent cause of action," only a statutory basis for declaratory relief. *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021) (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); other citation omitted). Section 2202 operates similarly as the procedural mechanism to seek other relief, such as injunctive relief, based on a declaratory judgment.

unavailable in state system). He emphasizes that, under Wisconsin Supreme Court Rule 61.10, disputes about media access are referred to the chief judge of the judicial administrative district "for resolution as an administrative matter" and that any ruling of the chief judge is not appealable to the Wisconsin Court of Appeals. ECF No. 23 at 4 (quoting WIS. SUP. CT. R. 61.10). Accordingly, he has "no state-court mechanism for a declaratory judgment that the [September Directive] is unlawful." *Id.* at 5.

In reply, Defendants argue that the chief judge review process laid out in Wisconsin Supreme Court Rule 61.10 essentially *is* Plaintiff's appeal process and that "a chief judge's ruling or order granting or denying access under SCR 61 is the final word on the matter, by law." ECF No. 24 at 11. Consequently, according to Defendants, "declaratory relief was not unavailable to [Plaintiff]—he got the declaration to which he was entitled under SCR 61.10" when he got Chief Judge Laufenberg's response to his request for review of the September Directive. *Id.*

The parties' competing arguments boil down to whether, as a matter of law, Chief Judge Laufenberg's decision on the September Directive qualifies as a form of declaratory relief. Defendants assert in a conclusory fashion that it is, but cite no authority to support this proposition. Without more, the Court is unable to decide whether Chief Judge Laufenberg's decision, to the extent it pertains to denials of specific requests to access the intake courtroom, constitutes a form of declaratory relief. *See, e.g.*, *Relief*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The redress or remedy . . . that a party asks of a court."); *Judgment*, *id.* ("A court or other tribunal's final determination of the rights and obligations of the parties *in a case* . . . ." (emphasis added)). Defendants also do not account for Plaintiff's allegation—which the Court must accept as true at this time—that Chief

Judge Laufenberg said she "lacked authority to overturn" the September Directive. ECF No. 20 at 5–6. That is, she did not uphold or strike down the September Directive on its merits; rather, she declined to pass on the merits. Defendants have not explained why, as a legal matter, this constitutes a pronouncement of Plaintiff's rights such that declaratory relief can said to have been available to Plaintiff.

At this time, the Court will accept Plaintiff's allegations as sufficiently alleging that no declaratory relief was available to him, such that he may state a claim for injunctive relief against Defendants. *See* 42 U.S.C. § 1983 (permitting claims for injunctive relief against judicial officers when "declaratory relief [is] unavailable"). The Court will deny Defendants' motion to dismiss in this regard. Further fact development about the content of Chief Judge Laufenberg's written response is needed. Defendants may raise this argument again, with adequate legal support, in a later stage of this case.[9]

#### 4.2.2 Declaratory Relief

"[J]udicial officers are not immune from actions for prospective declaratory relief . . . ." *Rahman v. Burton*, No. 25 CV 8489, 2026 WL 1180084, at *5 (N.D. Ill. Apr. 30, 2026) (citing *File v. Martin*, 33 F.4th 385, 391 (7th Cir. 2022). Defendants argue that Plaintiff's request for declaratory relief is entirely retrospective, not prospective, and accordingly cannot proceed.

[9]This conclusion is not inconsistent with the Court's application of judicial immunity to Defendants, because as explained thoroughly in the preceding sections, a judge or commissioner can act in a judicial capacity without issuing traditional legal relief or acting in a particular case or adjudication.

ECF No. 18 at 6–7. Plaintiff responds by pointing to his allegations that the harm from the September Directive is ongoing. ECF No. 23 at 7.

The Court agrees with Plaintiff. To adopt Defendants' argument, the Court would need to ignore Plaintiff's assertion in the operative complaint that the September Directive remains in effect and, ostensibly, would be enforced against him if he again seeks permission to photograph the intake courtroom. More significantly, the Court would need to ignore the robust body of precedent holding that a claim for prospective declaratory relief against state actors sued in their official capacities[10] may proceed against a government action that has ongoing effect despite occurring in the past. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 523 (7th Cir. 2021) ("The relevant inquiry is whether the suit seeks prospective relief against an ongoing violation of federal law. A permit issued in violation of due process remains unlawful as long as it is in force and effect."); *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) ("IPAS named individual state officials as defendants in its lawsuit. It alleges that those officials have obstructed its access to records under the PAIMI Act, an ongoing violation of federal law. The relief IPAS seeks—reasonable access to the records—is also prospective."); *MCI Telecommc'ns*

---

[10]Judge Kerkman and Chief Judge Laufenberg are state officials. WIS. STAT. § 753.07(1) (circuit court judges are "state employees"); *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021) ("In determining whether a person is a state official, courts look to the state laws creating the official's position, as well as the state laws governing the official's actions, state-court decisions, and the financial interdependence between the official and the state." (citing *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) and *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994))). The parties have not briefed whether Commissioner Michel is a state official. The Court assumes that he is for sake of the motion to dismiss but would entertain further motion practice on this issue.

*Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 345 (7th Cir. 2000) ("The challenged determinations are still in place, and the carriers seek to have the commissioners conform their future actions, including their continuing enforcement of the challenged determinations, with federal law." (citation omitted)); *see also id.* ("While the relief granted . . . may only be prospective, proof for the claim necessitating relief can be based on historical facts, and most often will be." (quoting *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000))).

Defendants characterize the operative complaint as "essentially asking this Court to '*invalidate* [their past] actions." ECF No. 18 at 7 (quoting *Justice Network, Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019)). This is an accurate but incomplete understanding; such a narrow reading is inappropriate in light of Plaintiff's allegation that the September Directive remains in effect and his express request for a declaration that "Defendants' *ongoing* actions, policies, and directives[, ]including but not limited to the September . . . [D]irective and its enforcement," violate the Constitution. ECF No. 20 at 13 (emphasis added). At this stage, the Court's "task is to 'conduct a straightforward inquiry into whether [Plaintiff's] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Driftless*, 16 F.4th at 521 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, (2002)). Here, the Court concludes that it does. Plaintiff's claim for declaratory relief may proceed.

**4.3 Qualified Immunity**

Because qualified immunity serves only to bar suits for damages against governmental actors, *Lindell v. Pollard*, 558 F. Supp. 3d 734, 744 (E.D. Wis. 2021) (citing *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012)), and the Court has otherwise determined that any damages

claim that Plaintiff may have would be barred by judicial immunity, the Court need not address Defendants' arguments regarding qualified immunity.

## 5. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted insofar as it seeks a ruling on the application of judicial immunity and denied insofar as it seeks dismissal of Plaintiff's claims for injunctive and declaratory relief. Because Plaintiff may proceed on his claims, the Court will issue a scheduling order contemporaneously with this Order.

Accordingly,

**IT IS ORDERED** that Defendants Honorable Chad Kerkman, Honorable Wynne Laufenberg, and Commissioner William Michel, II's joint motion to dismiss, ECF No. 22, be and the same is hereby **GRANTED in part and DENIED in part** as stated in this Order.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge